**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| Unknown Entity Holdings, LLC, | |
| Plaintiff, | |
| v. | Civ. Action No. _____ |
| Rockpoint Funding, LLC | Jury trial demanded |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

Plaintiff Unknown Entity Holdings, LLC ("Unknown Entity Holdings" or "Plaintiff"), by and through its attorneys, for its Complaint against Rockpoint Funding, LLC ("Rockpoint" or "Defendant"), alleges, on knowledge as to its own actions, and otherwise on information and belief, as follows:

**JURISDICTION AND VENUE**

1.      This court has jurisdiction over copyright infringement actions pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2.      This Court has personal jurisdiction over Defendant because Defendant purposely availed itself of the privilege of conducting business in Texas. On information and belief, Defendant operates the website rockpointlegalfunding.com (the "Rockpoint Website"). Defendant attempts to establish a presence in Texas through the Rockpoint Website by directing its advertising at Texas consumers. For example, the Rockpoint Website specifically identifies Texas as a state in which it funds lawsuits. Further, the Rockpoint Website has a page entitled "Texas Lawsuit Loans"[1] featured on its website that advertises itself as a lender providing loans

---

[1] A website capture showing the page is attached as Exhibit 1.

1

directly to Texas consumers. The Rockpoint Website has an interactive application feature, and directs users, including Texas residents, to contact Defendant via phone, email or regular mail. On information and belief, Defendant conducts its legal funding business in the state of Texas and with Texas consumers. Furthermore, as alleged herein, Defendant has committed a tort in whole or in part in Texas, subjecting it to jurisdiction here under Tex. Civ. Prac. & Rem. Code § 17.042.

3.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, or 28 U.S.C. § 1391(b)(3) because Defendant is subject to personal jurisdiction in this district.

## PARTIES

4.      Plaintiff Unknown Entity Holdings, LLC is a Delaware limited liability company with a principal place of business at 5717 Legacy Drive, Suite 250, Plano, Texas 75024.

5.      On information and belief, Rockpoint is a Delaware limited liability company with a principal place of business at 8200 Wilshire Blvd., Suite 400, Beverly Hills, California 90211.

## FACTS

A.      The Epidural Injections Work.

6.      Third-party Express Legal Funding LLC ("Express") created the work "How Much Do Epidural Steroid Injections Cost After an Accident?" (the "Epidural Injections Work") on or around May 26, 2022. As a result, Express owned any and all copyright rights in the Epidural Injections Work.

7.      On May 26, 2022, the Epidural Injections Work was first made available on Express' website, expresslegalfunding.com.

8.      Express filed an application for copyright registration of the Epidural Injections Work. The U.S. Copyright Office granted registration of the Epidural Injections Work as Registration Number TXu002334287.[2] The registration date for the Epidural Injections Work is August 16, 2022.

9.      On September 30, 2022, Express assigned the Epidural Injections Work, along with expresslegalfunding.com, to Plaintiff.

10.     The Epidural Injections Work is wholly original, and Plaintiff is the owner of the Epidural Injections Work, and the owner of valid and subsisting United States Copyright Registration No. TXu002334287.

B.      The Is It Worth It to Sue Work.

11.     Express created the work "Is It Worth It to Sue Somebody Who Doesn't Have Any Money?" (the "Is It Worth It to Sue Work") on or around June 16, 2022. As a result, Express owned any and all copyright rights in the Is It Worth It to Sue Work.

12.     On June 16, 2022, the Is It Worth It to Sue Work was first made available on expresslegalfunding.com.

13.     Express filed an application for copyright registration of the Is It Worth It to Sue Work. The U.S. Copyright Office granted registration of the Is It Worth It to Sue Work as Registration Number TXu002333701.[3] The registration date for the Is It Worth It to Sue Work is August 16, 2023.

---

[2] A true and correct copy of the registration certificate for Registration No. TXu002334287 is attached as Exhibit 2.

[3] A true and correct copy of the registration certificate for Registration No. TXu002333701 is attached as Exhibit 3.

14. On September 30, 2022, Express assigned the Is It Worth It to Sue Work to Plaintiff.

15. The Is It Worth It to Sue Work is wholly original, and Plaintiff is the owner of the Is It Worth It to Sue Work, and the owner of valid and subsisting United States Copyright Registration No. TXu002333701.

C. The Motorcycle Accident Work

16. Express created the work "Important Steps You Should Take After a Motorcycle Accident" (the "Motorcycle Accident Work") on or around October 21, 2021. As a result, Express owned any and all copyright rights in the Motorcycle Accident Work.

17. On October 21, 2021, the Motorcycle Accident Work was first made available on expresslegalfunding.com.

18. Express filed an application for copyright registration of the Motorcycle Accident Work. The U.S. Copyright Office granted registration of the Motorcycle Accident Work as Registration Number TXu002328095.[4] The registration date for the Motorcycle Accident Work is April 7, 2022.

19. On September 30, 2022, Express assigned the Motorcycle Accident Work to Plaintiff.

20. The Motorcycle Accident Work is wholly original, and Plaintiff is the owner of the Motorcycle Accident Work, and the owner of valid and subsisting United States Copyright Registration No. TXu002328095.

---

[4] A true and correct copy of the registration certificate for Registration No. TXu002328095 is attached as Exhibit 4.

D.    The Best Lawsuit Funding Company Work.

21.    Express created the work "What is the Best Lawsuit Funding Company?" (the "Best Lawsuit Funding Company Work") on or around March 2, 2021. As a result, Express owned any and all copyright rights in the Best Lawsuit Funding Company Work.

22.    On March 2, 2021, the Best Lawsuit Funding Company Work was first made available on expresslegalfunding.com.

23.    Express filed an application for copyright registration of the Best Lawsuit Funding Company Work. The U.S. Copyright Office granted registration of the Best Lawsuit Funding Company Work as Registration Number TXu002299820[5]. The registration date for the Best Lawsuit Funding Company Work is January 20, 2022.

24.    On September 30, 2022, Express assigned the Best Lawsuit Funding Company Work to Plaintiff.

25.    The Best Lawsuit Funding Company Work is wholly original, and Plaintiff is the owner of the Best Lawsuit Funding Company Work, and the owner of valid and subsisting United States Copyright Registration No. TXu002299820.

E.    The Beware of Dog Signs Work.

26.    Plaintiff created the work "Why "Beware of Dog Signs" May Not Protect Owners in Court" (the "Beware of Dog Signs Work") on or around January 3, 2023. As a result, Plaintiff owns any and all copyright rights in the Beware of Dog Signs Work.

27.    On January 3, 2023, the Beware of Dog Signs Work was first made available on Plaintiff's website, expresslegalfunding.com.

---

[5] A true and correct copy of the registration certificate for Registration No. TXu002299820 is attached as Exhibit 5.

28.     Plaintiff filed an application for copyright registration of the Beware of Dog Signs Work. The U.S. Copyright Office granted registration of the Beware of Dog Signs Work as Registration Number TXu002353230.[6] The registration date for the Beware of Dog Signs Work is January 4, 2023.

29.     The Beware of Dog Signs Work is wholly original, and Plaintiff is the owner of the Beware of Dog Signs Work, and the owner of valid and subsisting United States Copyright Registration No. TXu002353230.

F.     The Plaintiff vs. Defendant Work.

30.     Plaintiff created the work "Plaintiff vs. Defendant: What's the Difference Between Them" (the "Plaintiff vs. Defendant Work") on or around November 7, 2022. As a result, Plaintiff owns any and all copyright rights in the Plaintiff vs. Defendant Work.

31.     On November 7, 2022, the Plaintiff vs. Defendant Work was first made available on Plaintiff's website, expresslegalfunding.com.

32.     Plaintiff filed an application for copyright registration of the Plaintiff vs. Defendant Work. The U.S. Copyright Office granted registration of the Plaintiff vs. Defendant Work as Registration Number TXu002350007.[7] The registration date for the Plaintiff vs. Defendant Work is November 15, 2022.

33.     The Plaintiff vs. Defendant Work is wholly original, and Plaintiff is the owner of the Plaintiff vs. Defendant Work, and the owner of valid and subsisting United States Copyright Registration No. TXu002350007.

---

[6] A true and correct copy of the registration certificate for Registration No. TXu002353230 is attached as Exhibit 6.

[7] A true and correct copy of the registration corticate for Registration No. TXu002350007 is attached as Exhibit 7.

G.    Defendant's Conduct and History of Infringement.

34.    On information and belief, Defendant is engaged in the legal funding business in Texas and in other States. Defendant posts articles related to legal funding on the Rockpoint Website.

35.    Defendant has a history of infringing Plaintiff's intellectual property rights in order to enhance the value of the Rockpoint Website. In early 2022, Rockpoint used Plaintiff's U.S. Registered Trademark EXPRESS LEGAL FUNDING in its Google advertising in order to deceive consumers into visiting the Rockpoint Website instead of Defendant's website. Plaintiff's predecessor was forced to send a cease and desist letter to Rockpoint to stop the infringement. An example of Rockpoint's history of infringement is shown below:



36.     Rockpoint, intent on infringing Plaintiff's intellectual property, then began copying articles from Plaintiff's website for which Plaintiff owns federally registered copyrights, as described herein. Based on Rockpoint's history of disregarding Plaintiff's intellectual property rights, it is clear that Rockpoint's infringement is intentional.

H.     Defendant's Conduct – The Epidural Injections Infringing Work.

37.     On the Rockpoint Website, Defendant has published, printed, and publicly displayed, or caused to be published, printed, and publicly displayed, an article entitled "How Much Do Epidural Injections Cost After an Accident?" (the "Epidural Injections Infringing Work")[8], which is substantially similar to and a derivative work based on the Epidural Injections Work. On information and belief, the Epidural Injections Infringing Work was first made available to the public on September 5, 2023 via the Rockpoint Website, and the Epidural Injections Infringing Work has been continuously available to the public since that time.

38.     On information and belief, Defendant obtained physical possession of or otherwise viewed the Epidural Injections Work, and intentionally copied and made a derivative work of the Epidural Injections Work to create the Epidural Injections Infringing Work. That Defendant copied the Epidural Injections Work when it created the Epidural Injections Infringing Work is evidenced by the striking similarities between the Epidural Injections Work and the Epidural Injections Infringing Work, which cannot be explained other than as a result of copying and Defendant's access to the Epidural Injections Work as a result of the Epidural Injections Work being available on Plaintiff's website, expresslegalfunding.com, before Defendant created the Epidural Injections Infringing Work.

---

[8] A copy of the Epidural Injections Infringing Work is attached as Exhibit 8.

39.     Defendant copied the Epidural Injections Work without Plaintiff's authorization, consent, or knowledge, and without any remuneration to Plaintiff.

40.     As a result of Defendant's actions described above, Plaintiff has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, distribution, and public display of the Epidural Injections Infringing Work. Defendant has never accounted to or otherwise paid Plaintiff for its use of the Epidural Injections Work.

41.     Defendant's acts are causing, and unless restrained, will continue to cause damage and immediately irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

I.      Defendant's Conduct – The Is It Worthwhile to Sue Infringing Work.

42.     On the Rockpoint Website, Defendant has published, printed, and publicly displayed, or caused to be published, printed, and publicly displayed, an article entitled "Is it Worthwhile to Sue Someone if They Don't Have a Lot of Money?" (the "Is It Worthwhile to Sue Infringing Work")[9], which is substantially similar to and a derivative work based on the Is It Worth It to Sue Work. On information and belief, the Is It Worthwhile to Sue Infringing Work was first made available to the public on July 7, 2023 via the Rockpoint Website, and the Is It Worthwhile to Sue Infringing Work has been continuously available to the public since that time.

43.     On information and belief, Defendant obtained physical possession of or otherwise viewed the Is It Worth It to Sue Work, and intentionally copied and made a derivative work of the Is It Worth It to Sue Work to create the Is It Worthwhile to Sue Infringing Work. That Defendant copied the Is It Worth It to Sue Work when it created the Is It Worthwhile to Sue Infringing Work is evidenced by the striking similarities between the Is It Worth It to Sue Work and the Is It Worthwhile to Sue Infringing Work, which cannot be explained other than as a

---

[9] A copy of the Is It Worthwhile to Sue Infringing Work is attached as Exhibit 9.

result of copying and Defendant's access to the Is It Worth It to Sue Work as a result of the Is It Worth It to Sue Work being available on Plaintiff's website, expresslegalfunding.com, before Defendant created the Is It Worthwhile to Sue Infringing Work.

44.    Defendant copied the Is It Worth It to Sue Work without Plaintiff's authorization, consent, or knowledge, and without any remuneration to Plaintiff.

45.    As a result of Defendant's actions described above, Plaintiff has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, distribution, and public display of the Is It Worthwhile to Sue Infringing Work. Defendant has never accounted to or otherwise paid Plaintiff for its use of the Is It Worth It to Sue Work.

46.    Defendant's acts are causing, and unless restrained, will continue to cause damage and immediately irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

J.    Defendant's Conduct – Rear-End Accident Infringing Work.

47.    On the Rockpoint Website, Defendant has published, printed, and publicly displayed, or caused to be published, printed and publicly displayed, an article entitled "Who is at Fault in a Rear-End Accident?" (the "Rear-End Accident Work")[10], which is substantially similar to and a derivative work based on the Motorcycle Accident Work. On information and belief, the Rear-End Accident Infringing Work was first made available to the public on May 1, 2023 via the Rockpoint Website, and the Rear-End Accident Infringing Work has been continuously available to the public since that time.

48.    On information and belief, Defendant obtained physical possession of or otherwise viewed the Motorcycle Accident Work to create the Rear-End Accident Infringing Work. That Defendant copied the Motorcycle Accident Work to create the Rear-End Accident

---

[10] A copy of the Rear-End Accident Infringing Work is attached as Exhibit 10.

10

Infringing Work is evidenced by the striking similarities between the Motorcycle Accident Work and the Rear-End Accident Infringing Work, which cannot be explained other than as a result of copying and Defendant's access to the Motorcycle Accident Work as a result of the Motorcycle Accident Work being available on Plaintiff's website, expresslesgalfunding.com, before Defendant created the Rear-End Accident Infringing Work.

49.      Defendant copied the Motorcycle Accident Work without Plaintiff's authorization, consent, or knowledge, and without any remuneration to Plaintiff.

50.      As a result of Defendant's actions described above, Plaintiff has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, distribution, and public display of the Rear-End Accident Infringing Work. Defendant has never accounted to or otherwise paid Plaintiff for its use of the Motorcycle Accident Work.

51.      Defendant's acts are causing, and unless restrained, will continue to cause damage and immediately irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

K.      Defendant's Conduct – The Best Lawsuit Loan Company Infringing Work.

52.      On the Rockpoint Website, Defendant has published, printed, and publicly displayed, or caused to be published, printed or publicly displayed, an article entitled "Choosing the Best Lawsuit Loan Company for You" (the "Best Lawsuit Loan Company Infringing Work")[11], which is substantially similar to and a derivative work based on the Best Lawsuit Funding Company Work. On information and belief, the Best Lawsuit Loan Company Infringing Work was first made available to the public on July 19, 2023 via the Rockpoint Website, and the Best Lawsuit Loan Company Infringing Work has been continuously available to the public since that time.

---

[11] A copy of the Best Lawsuit Loan Company Infringing Work is attached as Exhibit 11.

11

53.     On information and belief, Defendant obtained physical possession of or otherwise viewed the Best Lawsuit Funding Company Work to create the Best Lawsuit Loan Company Infringing Work. That Defendant copied the Best Lawsuit Funding Company Work to create the Best Lawsuit Loan Company Infringing Work is evidenced by the striking similarities between the Best Lawsuit Funding Company Work and the Best Lawsuit Loan Company Infringing Work, which cannot be explained other than as a result of copying and Defendant's access to the Best Lawsuit Funding Company Work as a result of the Best Lawsuit Funding Company Work being available on Plaintiff's website, expresslegalfunding.com, before Defendant created the Best Lawsuit Loan Company Infringing Work.

54.     Defendant copied the Best Lawsuit Funding Company Work without Plaintiff's authorization, consent, or knowledge, and without any remuneration to Plaintiff.

55.     As a result of Defendant's actions described above, Plaintiff has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, distribution, and public display of the Best Lawsuit Loan Company Infringing Work. Defendant has never accounted to or otherwise paid Plaintiff for its use of the Best Lawsuit Funding Company Work.

56.     Defendant's acts are causing, and unless restrained, will continue to cause damage and immediately irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

L.     Defendant's Conduct – The Beware of Dog Sign Infringing Work.

57.     On the Rockpoint Website, Defendant has published, printed, and publicly displayed, or caused to be published, printed or publicly displayed, an article entitled "Dog Bites: Can I Sue Someone Whose Dog Bit Me, Even if They Had a "Beware of Dog" Sign?" (the "Beware of Dog Sign Infringing Work")[12], which is substantially similar to and a derivative

---

[12] A copy of the Beware of Dog Sign Infringing Work is attached at Exhibit 12.

work based on the Beware of Dog Signs Work. On information and belief, the Beware of Dog Sign Infringing Work was first made available to the public on September 19, 2023 via the Rockpoint Website, and the Beware of Dog Sign Infringing Work has been continuously available to the public since that time.

58.    On information and belief, Defendant obtained physical possession of or otherwise viewed the Beware of Dog Signs Work to create the Beware of Dog Sign Infringing Work. That Defendant copied the Beware of Dog Signs Work to create the Beware of Dog Sign Infringing Work is evidenced by the striking similarities between the Beware of Dog Signs Work and the Beware of Dog Sign Infringing Work, which cannot be explained other than as a result of copying and Defendant's access to the Beware of Dog Signs Work as a result of the Beware of Dog Signs Work being available on Plaintiff's website, expresslegalfunding.com, before Defendant created the Beware of Dog Sign Infringing Work.

59.    Defendant copied the Beware of Dog Signs Work without Plaintiff's authorization, consent, or knowledge, and without any remuneration to Plaintiff.

60.    As a result of Defendant's actions described above, Plaintiff has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, distribution, and public display of the Beware of Dog Sign Infringing Work. Defendant has never accounted to or otherwise paid Plaintiff for its use of the Beware of Dog Signs Work.

61.    Defendant's acts are causing, and unless restrained, will continue to cause damage and immediately irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

M.    <u>Defendant's Conduct – The Plaintiff and Defendant Infringing Work.</u>

62.    On the Rockpoint Website, Defendant has published, printed, and publicly displayed, or caused to be published, printed or publicly displayed, an article entitled "What is

13

the Difference Between a Plaintiff and Defendant?" (the "Plaintiff and Defendant Infringing Work")[13], which is substantially similar to and a derivative work based on the Plaintiff vs. Defendant Work. On information and belief, the Plaintiff and Defendant Infringing Work was first made available to the public on May 5, 2023 via the Rockpoint Website, and the Plaintiff and Defendant Infringing Work has been continuously available to the public since that time.

63.     On information and belief, Defendant obtained physical possession of or otherwise viewed the Plaintiff vs. Defendant Work to create the Plaintiff and Defendant Infringing Work. That Defendant copied the Plaintiff vs. Defendant Work to create the Plaintiff and Defendant Infringing Work is evidenced by the striking similarities between the Plaintiff vs. Defendant Work and the Plaintiff and Defendant Infringing Work, which cannot be explained other than as a result of copying and Defendant's access to the Plaintiff vs. Defendant Work as a result of the Plaintiff vs. Defendant Work being available on Plaintiff's website, expresslegalfunding.com, before Defendant created the Plaintiff and Defendant Infringing Work.

64.     Defendant copied the Plaintiff vs. Defendant Work without Plaintiff's authorization, consent, or knowledge, and without any remuneration to Plaintiff.

65.     As a result of Defendant's actions described above, Plaintiff has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, distribution, and public display of the Plaintiff and Defendant Infringing Work. Defendant has never accounted to or otherwise paid Plaintiff for its use of the Plaintiff vs. Defendant Work.

66.     Defendant's acts are causing, and unless restrained, will continue to cause damage and immediately irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

---

[13] A copy of the Plaintiff and Defendant Infringing Work is attached as Exhibit 13.

## COUNT I
### Federal Copyright Infringement of the Epidural Injections Work (17 U.S.C. § 501)

67. Plaintiff repeats and realleges paragraphs 1 through 10 and 34 through 41 hereof, as if fully set forth herein.

68. The Epidural Injections Work is an original literary work containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et seq. Plaintiff is the exclusive owner of rights under copyright law in and to the Epidural Injections Work. Plaintiff owns a valid copyright registration for the Epidural Injections Work, attached as Exhibit 2.

69. Through Defendant's conduct alleged herein, including Defendant's reproduction, distribution, and public display of the Epidural Injections Infringing Work, which is copied from, a derivative of, and substantially similar to the Epidural Injections Work, without Plaintiff's permission, Defendant has directly infringed Plaintiff's exclusive rights in the Epidural Injections Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

70. On information and belief, Defendant's infringing conduct alleged herein was, and continues to be, willful and with full knowledge of Plaintiff's rights in the Epidural Injections Work, and such infringing conduct has enabled Defendant illegally to obtain profit therefrom.

71. As a direct and proximate result of Defendant's infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the Epidural Injections Work. Plaintiff therefore is entitled to permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

## COUNT II
### Federal Copyright Infringement of the Is It Worth It to Sue Work (17 U.S.C. § 501)

72. Plaintiff repeats and realleges paragraphs 1 through 5, 11 through 15, 34 through 36 and 42 through 46 hereof, as if fully set forth herein.

73. The Is It Worth It to Sue Work is an original literary work containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et seq. Plaintiff is the exclusive owner of rights under copyright law in and to the Is It Worth It to Sue Work. Plaintiff owns a valid copyright registration for the Is It Worth It to Sue Work, attached as Exhibit 3.

74. Through Defendant's conduct alleged herein, including Defendant's reproduction, distribution, and public display of the Is It Worthwhile to Sue Infringing Work, which is copied from, a derivative of, and substantially similar to the Is It Worth It to Sue Work, without Plaintiff's permission, Defendant has directly infringed Plaintiff's exclusive rights in the Is It Worth It to Sue Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

75. On information and belief, Defendant's infringing conduct alleged herein was, and continues to be, willful and with full knowledge of Plaintiff's rights in the Is It Worth It to Sue Work, and such infringing conduct has enabled Defendant illegally to obtain profit therefrom.

76. As a direct and proximate result of Defendant's infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the Is It Worth It to Sue Work. Plaintiff therefore is entitled to permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

## COUNT III
**Federal Copyright Infringement of the Motorcycle Accident Work (17 U.S.C. § 501)**

77. Plaintiff repeats and realleges paragraphs 1 through 5, 16 through 20, 34 through 36 and 47 through 51 hereof, as if fully set forth herein.

78. The Motorcycle Accident Work is an original literary work containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et seq. Plaintiff is the exclusive owner of rights under copyright law in and to the Motorcycle Accident Work. Plaintiff owns a valid copyright registration for the Motorcycle Accident Work, attached as Exhibit 4.

79. Through Defendant's conduct alleged herein, including Defendant's reproduction, distribution, and public display of the Rear-End Accident Infringing Work, which is copied form, a derivative of, and substantially similar to the Motorcycle Accident Work, without Plaintiff's permission, Defendant has directly infringed Plaintiff's exclusive rights in the Motorcycle Accident Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

80. On information and belief, Defendant's infringing conduct alleged herein was, and continues to be, willful and with full knowledge of Plaintiff's rights in the Motorcycle Accident Work, and such infringing conduct has enabled Defendant illegally to obtain profit therefrom.

81. As a direct and proximate result of Defendant's infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the Motorcycle Accident Work. Plaintiff therefore is entitled to permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

**COUNT IV**
**Federal Copyright Infringement of the Best Lawsuit Funding Company Work**
**(17 U.S.C. § 501)**

82.    Plaintiff repeats and realleges paragraphs 1 through 5, 21 through 25, 34 through 36 and 52 through 56 hereof, as if fully set forth herein.

83.    The Best Lawsuit Funding Company Work is an original literary work containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et seq. Plaintiff is the exclusive owner of rights under copyright law in and to the Best Lawsuit Funding Company Work. Plaintiff owns a valid copyright registration for the Best Lawsuit Funding Company Work, attached as Exhibit 5.

84.    Through Defendant's conduct alleged herein, including Defendant's reproduction, distribution, and public display of the Best Lawsuit Loan Company Infringing Work, without Plaintiff's permission, Defendant has directly infringed Plaintiff's exclusive rights in the Best Lawsuit Funding Company Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

85.    On information and belief, Defendant's infringing conduct alleged herein was, and continues to be, willful and with full knowledge of Plaintiff's rights in the Best Lawsuit Funding Company Work, and such infringing conduct has enabled Defendant illegally to obtain profit therefrom.

86.    As a direct and proximate result of Defendant's infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the Best

Lawsuit Funding Company Work. Plaintiff therefore is entitled to permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

## COUNT V
### Federal Copyright Infringement of the Beware of Dog Signs Work (17 U.S.C. § 501)

87.    Plaintiff repeats and realleges paragraphs 1 through 5, 26 through 29, 34 through 36 and 57 through 61 hereof, as if fully set forth herein.

88.    The Beware of Dog Signs Work is an original literary work containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et seq. Plaintiff is the exclusive owner of rights under copyright law in and to the Beware of Dog Signs Work. Plaintiff owns a valid copyright registration for the Beware of Dog Signs Work, attached as Exhibit 6.

89.    Through Defendant's conduct alleged herein, including Defendant's reproduction, distribution, and public display of the Beware of Dog Sign Infringing Work, without Plaintiff's permission, Defendant has directly infringed Plaintiff's exclusive rights in the Beware of Dog Signs Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

90.    On information and belief, Defendant's infringing conduct alleged herein was, and continues to be, willful and with full knowledge of Plaintiff's rights in the Beware of Dog Signs Work, and such infringing conduct has enabled Defendant illegally to obtain profit therefrom.

91.    As a direct and proximate result of Defendant's infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the Beware of

Dog Signs Work. Plaintiff therefore is entitled to permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

## COUNT VI
**Federal Copyright Infringement of the Plaintiff vs. Defendant Work (17 U.S.C. § 501)**

92.     Plaintiff repeats and realleges paragraphs 1 through 5, 30 through 36 and 62 through 66 hereof, as if fully set forth herein.

93.     The Plaintiff vs. Defendant Work is an original literary work containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et seq. Plaintiff is the exclusive owner of rights under copyright law in and to the Plaintiff vs. Defendant Work. Plaintiff owns a valid copyright registration for the Plaintiff vs. Defendant Work, attached as Exhibit 7.

94.     Through Defendant's conduct alleged herein, including Defendant's reproduction, distribution, and public display of the Plaintiff and Defendant Infringing Work, without Plaintiff's permission, Defendant has directly infringed Plaintiff's exclusive rights in the Plaintiff vs. Defendant Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

95.     On information and belief, Defendant's infringing conduct alleged herein was, and continues to be, willful and with full knowledge of Plaintiff's rights in the Plaintiff vs. Defendant Work, and such infringing conduct has enabled Defendant illegally to obtain profit therefrom.

96.     As a direct and proximate result of Defendant's infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the Plaintiff vs.

Defendant Work. Plaintiff therefore is entitled to permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment in favor of Plaintiff against Defendant on all counts, and grant an injunction, permanently enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal services or otherwise, from:

(a)    distributing, advertising, or displaying, or authorizing any third party to distribute, advertise or display (i) the Epidural Injections Infringing Work; (ii) the Is It Worthwhile to Sue Infringing Work; (iii) the Rear-End Accident Infringing Work; (iv) the Best Lawsuit Loan Company Infringing Work; (v) the Beware of Dog Sign Infringing Work; and (vi) the Plaintiff and Defendant Infringing Work; and any products, works, or other materials that include, copy, are derived from, or otherwise embody (u) the Epidural Injections Work; (v) the Is It Worth It to Sue Work; (w) the Motorcycle Accident Work; (x) the Best Lawsuit Funding Company Work; (y) the Beware of Dog Signs Work; or (z) the Plaintiff vs. Defendant Work (collectively, the "Copyrighted Works");

(b)    reproducing, distributing, or publicly displaying the Copyrighted Works, creating any derivative works based on the Copyrighted Works, or engaging in any activity that infringes Plaintiff's rights in the Copyrighted Works; and

(c)    aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) or (b); and for such other and further relief as the Court deems just and proper.

21

**JURY DEMAND**

Plaintiff Unknown Entity Holdings, LLC respectfully demands a trial by jury as to all counts so triable.

Date: November 17, 2023

Respectfully submitted,

THOMPSON COBURN LLP

/s/ Matthew A. Braunel

Nicole L. Williams (TX # 24041784)
Jasmine S. Wynton (TX #24090481)
Thompson Coburn LLP
2100 Ross Avenue, Suite 3200
Dallas, Texas 75201
(972) 629-7100 (telephone)
(972) 629-7171 (fax)
nwilliams@thompsoncoburn.com
jwynton@thompsoncoburn.com

Matthew A. Braunel (MO # 50711)
Thompson Coburn LLP
One US Bank Plaza
Saint. Louis, MO 63101
(314) 552-6000 (telephone)
(314) 552-7000 (fax)
mbraunel@thompsoncoburn.com

*Attorneys for Plaintiff*